BRETT L. TOLMAN, United States Attorney (No. 8821)
JOHN W. HUBER, Assistant United States Attorney (No. 7226)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:09 CR 119 DB |
| Plaintiff, | : | OPPOSITION TO DEFENDANT VIEHL'S MOTION FOR CASE |
| v. | : | REASSIGNMENT FOR SENTENCING BASED ON BREACH OF PLEA |
| WILLIAM JAMES VIEHL, | : | AGREEMENT  [Doc. 83] |
| Defendant. | : | |
| | : | JUDGE DEE BENSON |
| | : | |

_____

John W. Huber, Assistant United States Attorney, respectfully submits this

Opposition to Defendant Viehl's Motion for Case Reassignment for Sentencing Based on

Breach of Plea Agreement.  The United States did not breach the plea agreement. The

defendant's motion misses the mark, and engages in a self-serving attempt to parse out

prosecution statements to support a misguided legal theory.  When the defendant's

argument is taken to its logical end, the defendant contends that the United States District

Court is an extension of the prosecution, and merely adheres to its "wink and nod"

dictates.  All the while, the defendant sidesteps the fact that he invited focused argument

from the prosecution when he asked for a below-guideline sentence.  On the other hand, the defendant's motion is silent as to the crime victim's impact on the Court's sentencing determination, as well as the Court's independent analysis of the case via its own presentence investigation.

*To be sure*, the United States fulfilled its part of the plea agreement and continues to stand by its recommendation of a low-end guideline term of incarceration.  The Court should deny the defendant's motion.

## FACTS

1.   The defendant entered into a standard plea agreement with the United States, and the prosecution's obligations are outlined in the statement in advance of plea of guilty at paragraph 12:

> The United States agrees:
>
> (1)     To move to dismiss Count II at the time of sentencing;
>
> (2)     To recommend that the defendant receive credit for accepting responsibility, and be sentenced at the low end of the guideline range determined by the Court at sentencing; and
>
> [3]     To recommend, based upon the evidence, that the loss amount to be used for calculating the sentencing guideline range should not exceed seventy thousand dollars ($70,000.00).

2.   The prosecution has never deviated from these commitments, and continues to stand by them.  The United States has repeatedly and clearly recommended to the Court that the defendant should be sentenced at the low end of the guideline range that the

Court determines to be applicable.  The United States has never asked for any incarceration beyond the low end of the guideline range.

3.   The United States Probation Office completed a presentence investigation on behalf of the Court, and presented a report to the Court and the parties.  That report includes standard insight into the defendant's background as well as an analysis of the crime and its impact.  The report includes details of the defendant's involvement in another attack on the Lodder mink farm in Kaysville and an attempted raid on a mink farm in Hyrum, Utah, in the fall of 2008.

4.   The victim of the defendant's crime provided a written impact statement to the Court prior to sentencing.  He also further exercised his rights under the Crime Victim Rights Act, 18 U.S.C. § 3771, and offered an extended, emotional statement at the November 12, 2009 hearing.

5.   Contrary to the prosecution's recommendation for a low-end sentence in the plea agreement, the defendant filed a sentencing memorandum less than 48 hours before the November 12, 2009 sentencing hearing.  In that written argument, the defendant advocated for early release from custody, credit toward incarceration time for standard pretrial release time, as well as a full 25% reduction from the prosecutor's recommended sentence.

6.   The Court conducted its own analysis of the case.  The Court weighed the factors in 18 U.S.C. § 3553, as required by law, and considered other sources prior to

3

announcing an intended sentence, including the victim's perspective, letters from the

defendant's supporters, and the presentence report.  The court independently

characterized the defendant's crime as a "terrorist" act.

## ARGUMENT

**I.      The United States Did Not Breach the Plea Agreement.**

The defendant has the burden to prove that a breach occurred by a preponderance

of the evidence.  *Cunningham v. Diesslin*, 92 F.3d 1054, 1059 (10th Cir. 1996).

Nevertheless, "[i]t is well settled that we must interpret the agreement according to the

defendant's reasonable understanding of its terms."  *United States v. Scott*, 469 F.3d

1335, 1338 (10th Cir. 2006).  This standard is clear.  However, the defendant

mischaracterized what happened during the hearing, and improperly claims that a breach

occurred.  By isolating prosecutor statements out of context, the defendant inaccurately

compares this matter to the circumstances in a case like *United States v. Cachucha*, 484

F.3d 1266 (10th Cir. 2007).[1]

The defendant's out-of-context analysis does not assist the Court.  On the other

hand, accuracy and context expose the lack of foundation in the defendant's motion.

_____

[1]In *Cachucha*, the Tenth Circuit reversed a sentencing because the prosecutor
essentially argued against the sentence recommended in the plea agreement.  There, the
prosecution went into great detail about how inadequate a guideline sentence was, how
they were "way too low" and how the guidelines "don't make any sense to me as a
professional prosecutor."  Such a message was never delivered by the prosecution in this
case.

Accurately stated, the plea agreement issue for determination is *whether it was reasonable for the defendant to believe that he could file a last-minute brief arguing for early release below the low end of the guidelines and expect that the prosecutor was barred from arguing against that, and in support of the agreed-upon recommendation at the sentencing hearing*.  This is not a reasonable understanding of the terms of the plea agreement.

> **II.    The United States Fairly Responded to the Defendant's Eleventh-Hour Argument for Early Release, Credit for Non-Custodial Time, and a 25% Reduction from the Recommended Sentence.**

The defendant cannot engage the prosecution with an argument and then cry foul. The defendant and prosecution negotiated a plea agreement wherein the United States agreed to affirmatively recommend a low-end guideline term of incarceration. Apparently not satisfied with that favorable term, the defendant filed an extensive sentencing memorandum [Doc. 74] shortly before the November 12, 2009 hearing.  The defendant's brief strongly advocated for the early release of the defendant that would amount to a 25% reduction from the prosecution's recommended sentence.  In oral argument, too, defense counsel admitted that the defendant's position at the November 12, 2009 hearing was that he should be given credit for "time served essentially and let him out."  (Tr. 21).

The defendant argued that 18 U.S.C. § 3553 factors justified the Court in decreasing the sentence from that recommended by the United States in the plea

agreement. Nevertheless, because the United States argued to the contrary at the

sentencing hearing — that is, this crime did not warrant the leniency of an early release,

credit for time served, or a 25% reduction — the defendant bemoans that there has been a

breach in the plea agreement.

  This protest is misplaced where the United States affirmatively restated its agreed-

upon incarceration recommendation no less than three times during the November 12

hearing:

> [Prosecutor:] I want it to be clear that our commitment in the plea
> agreement is that we do recommend the low end of the guideline range that
> you [the Court] determine to be applicable to Mr. Viehl today. (Tr. 7).
>
>    * * *
>
> [Prosecutor:] In making this presentation, Judge, we still recommend the
> low end of the guidelines that you find applicable, but I do not want the
> Court to consider the request made in the sentencing memorandum in
> asking for an early release and walking out today after four and a half
> months . . . . (Tr. 10-11).
>
>    * * *
>
> [The Court to the prosecutor:] The guidelines seem to indicate a range of
> six months to a year. As I understand it, your agreement in the plea bargain,
> . . . is that you're recommending the six months?  [Answer:] Yes, sir. (Tr.
> 21).

  In comparison, the defendant's allegations in this motion are nothing more than

feigned disdain. It is not reasonable for the defendant to request a downward deviation

from the prosecution's agreed-upon recommendation, and then argue that the prosecutor's

actions in defending his recommendation are improper. Indeed, the prosecutor made it

clear during his sentencing argument that he was responding directly to the defense

request for an early release, and not deviating from his commitments in the plea agreement.  Packaged differently, the defendant's apparent position is that he had a right to unfettered argument.  That is, the prosecution could only recommend a low-end sentence, and could not justify or support that argument when attacked.

The defendant's present motion contends that the prosecution argued too enthusiastically against the defendant's early-release request, directly causing the Court to lean toward a much higher sentence.  However, the prosecution had no indication at the time (and the defendant cannot point to anything in the record to indicate) that the Court was not going to actually entertain the early-out request.  To the contrary, the Court itself noted the frequency with which defendants in that courtroom have benefitted from arguments for sentences below the prosecution's plea agreement recommendations: "I have many times from this bench, as [this particular prosecutor] knows, and is only too well aware, gone below the advisory guidelines when I have felt that the 3553 factors overwhelmed the advisory guideline indications . . .".  (Tr. 26).  In other words, when a defendant aggressively argues for early release below the prosecutor's low-end recommendation in this Court, the prosecutor had better be well-prepared to defend his recommendations for a guideline sentence.  In fact, the Court even pointed out that this particular defendant "probably would" (Tr. 25) have been rewarded with early release if his violation had been a generic property crime: "[the Court's] general philosophy at sentencing has always been that with a person with no criminal history [like the

7

defendant], that they should be dealt with as leniently as possible on the first charge."
(Tr. 23).

Faced with this known reality, and the defendant's specific 25% downward
deviation argument, the United States fashioned a presentation and argument specifically
focused to prevent early release and thereby send a message to others who ascribe to the
defendant's philosophy.  The clearly stated intent of the prosecution's sentencing
argument was to support and justify its plea agreement recommendation in the face of
attack, and not to avoid its plea agreement obligations.  This position was articulated at
the sentencing hearing, but not mentioned in the defendant's motion: "In making this
presentation, Judge, we still recommend the low end of the guidelines that you find
applicable, but I do not want the Court to consider the request made in the sentencing
memorandum in asking for an early release and walking out today after four and a half
months . . .".  (Tr. 10-11).

Ignoring this stated intent, the defendant boldly asserts that the "only conceivable
purpose" (D. Mot. at 13) for the prosecution putting up any fight was to make a mockery
of its obligations under the plea agreement.  Apparently, the defendant's narrow view is
that the only tool for "sending a message" in sentencing is incarceration.  To the contrary,
there are many tools available to a judge at sentencing, such as delivering an admonition,
entering findings on the record, customizing supervised release conditions, issuing a fine,
ordering appropriate restitution, and the like.   Besides being specifically designed to

8

counter the defense argument for a 25% sentence reduction, the prosecution's argument recommended a low-end term of imprisonment, and asked the Court to send a message that this is a serious offense to a broader community.[2]  These arguments are not incompatible with one another, nor do they breach the terms of the plea agreement.

### III.   The United States Most Often Recommends the Imposition of a Term of Incarceration Consistent with Federal Sentencing Guidelines, and Did So Here.

The United States continues to recommend a low-end term of incarceration in this case.  This recommendation is in line with Department of Justice policy and statutory mandates to advocate for fair sentences and avoid unwarranted sentencing disparities among defendants in similar circumstances.  *See* 28 U.S.C. §991(b)(1)(B).  These objectives are most often sought by advocating the imposition of guideline sentences to a court.

In this matter, the defendant stands convicted of a violation of 18 U.S.C. § 43, Damage and Interference with Animal Enterprises.  This is the first such prosecution under this statute in the District of Utah, and it appears to be one of the first convictions in the nation for such a violation.  Accordingly, the United States has deferred to the United States Sentencing Commission and its advisory guidelines in recommending a particular term of incarceration in this case.  Without the benefit of reviewing a history of

---

[2]On November 12, 2009 the courtroom was filled with supporters of both the defendant and the victim, and print and broadcast media were in attendance. The gallery was there to hear the Court's perspective and findings.

cases comparable to the defendant's violation, the United States stands by its recommendation for a guideline term of incarceration.  The recommendation is for the low end because of the defendant's age and lack of criminal history.

As the Court has stated, in many cases it has disagreed with the United States' recommendation for a guideline term of incarceration.  In those particular situations, the Court has viewed a guideline sentence as too harsh.  Here, the opposite has occurred, resulting in a rare occurrence.  The prosecution's guideline recommendation has been rejected as too lenient.  As a whole, these dynamics demonstrate what we all expect from the judiciary — independent authority and judgment.

## IV.    The Court Conducted its own Analysis in Determining an Appropriate Sentence.

The defendant asserts that the prosecutor subverted the plea agreement and single-handedly walked the Court down a path toward a higher sentence, tainting this Court's independence along the way.  In reality, the Court relied on its own analysis of the defendant's crime in determining that the prosecution's affirmative low-end sentence recommendation was not enough.  Indeed, it was the defense who urged the Court to consider the 3553 factors, as opposed to a guideline-only analysis.  (Tr. 23).  The defendant highlighted 3553 factors that supported his early release, but the Court found that other 3553 factors were more compelling in determining not only that early release was inappropriate, but that the low-end recommendation was, as well: "I recognize the government's recommendation for six months, but I don't agree with it.  I certainly don't

10

agree with [the defense] request for release." (Tr. 24-25). The Court balanced the 3553 factors in explaining that an incarceration sentence above the guidelines was appropriate: "I can't ignore another aspect of 3553 which says that the sentence imposed should reflect not only the seriousness of the offense but to promote respect for the law and to provide just punishment and to afford adequate deterrence to criminal conduct." (Tr. 24).

In addition, the Court explained that it was also relying on the presentence investigation in determining that the defendant's early release request was inappropriate, as well as the prosecutor's recommendation for a low-end sentence. (Tr. 25-26). It was the presentence report that advised the Court that the defendant was involved in two other mink farm incidents beyond his conviction. *Id.* In reviewing that information in the presentence report, the Court declared that it could not "ignore the fact that [the defendant] was out scouting around doing whatever at other mink farms." (Tr. 26).

Then, there was the victim of the crime who exercised his statutory rights to be heard at sentencing. *See* 18 U.S.C. § 3771(a)(4). He offered an extended, and at times emotional, statement to the Court at the November 12 hearing. (Tr. 13-20). In fact, the duration of the victim's sentencing presentation was as long as the combined total of both the defense (Tr. 4-7) and the prosecution (Tr. 7-12). In the end, the Court referenced the victim's perspective in announcing that the prosecution's low-end sentence recommendation was not sufficient:

> It is one group disagreeing with the lawful activities of another group, and based on that philosophical disagreement, engaging in violent behavior that

11

> has consequences well beyond the damage to the mink sheds in question or,
> for that matter, the mink in question.  It terrorizes people.  It makes them
> change their habits.  It makes them worry.  It makes their children
> concerned.  It makes them afraid when they go to bed at night.  These are
> people that I'm assuming are hardworking second or third or fourth
> generation mink ranchers.  It just does not make sense to me.

(Tr. 22-23).

Of course, experienced litigants should not be surprised that a judge will conduct

an independent analysis of a case prior to sentencing, nor should individual defendants.

As in every guilty plea before the Court, this individual defendant was advised of, and

acknowledged the following:

> I know that the sentencing procedures in this case and the ultimate sentence
> will be determined pursuant to 18 U.S.C. § 3553(a), and that the Court must
> consider, but is not bound by, the United States Sentencing Guidelines, in
> determining my sentence.  I have discussed these procedures with my
> attorney.  I also know that the final calculation of my sentence by the Court
> may differ from any calculation the United States, my attorney, or I may
> have made, and I will not be able to withdraw my plea if this occurs.

(Statement By Defendant in Advance of Guilty Plea, Doc. 70, para 3).  In this matter, the

Court did what it is always authorized to do.  The Court voiced its independent intention

to fashion a sentence that neither the defense nor the prosecution agreed upon, but was a

known possibility under the law.

## CONCLUSION

On November 12, 2009, the Court stated its intention to sentence to a term of incarceration that was not contemplated by either party.  Because of how it would impact the defendant, the Court suggested that procedural due process called for a continuance during which the defendant could attempt to dissuade the Court from imposing the sentence.  Instead, the defendant focused a misguided attack upon the prosecution.  The prosecution has abided by its plea agreement commitments and will continue to do so. The defendant's motion should be denied and the matter should proceed to final sentencing before this Court.

Dated this 9th  day of December, 2009.

BRETT L. TOLMAN
United States Attorney

/s/ *John W. Huber*

_____

JOHN W. HUBER
Assistant United States Attorney